## No. 12,057.

### SUCCESSION OF LOUIS OCTAVE HYMEL.
### OPPOSITION OF MRS. F. E. TASSIN.

48  737
49  462

Recognizing his indebtedness to his children on account of their residuary claims as heirs of their deceased mother for a share in the community, the father directed a sum of money largely in excess thereof to be, by his commission merchant, transferred to their account, without designating the purpose for so doing: *Held.* that the first presumption of law is, that a payment of said indebtedness was intended, and thereby accomplished.

#### ON REHEARING.

The case is remanded only as relates to the effect of a renunciation and to determine whether, under the circumstances, it can be invoked against the one renouncing.

APPEAL from the Twenty-first Judicial District Court for the Parish of St. Charles.   *Rost, J.*

---

*James Legendre* and *Robert G. Dugue* for Executor, Appellee.

---

*Fenner, Henderson & Fenner* and *Joseph F. Poché* for Opponent, Appellant.

---

Argued and submitted February 24, 1896.

Opinion handed down March 23, 1896.

Rehearing refused, reasons assigned, April 20, 1896.

---

The opinion of the court was delivered by

WATKINS J.   This controversey grows out of an opposition to an executor's provisional account, in which Mrs. Tassin claims, as an

47

heir of her mother, Adeline Trosclair, predeceased wife of Louis Otcave Hymel, the sum of six thousand eight hundred and eighty-one dollars and thirty-five cents, as her distributive share of the sum of forty-one thousand two hundred and eighty-eight dollars and eleven cents, which represented her mother's interest in the community between her and her surviving husband, and which he retained in his possession as usufructuary; and for which his estate is responsible.

*Per contra,* the contention of counsel for the executor is, that, while admitting the correctness of the foregoing statement, nothing is due to opponent, because the deceased gave to each one of his children, on the 5th of January, 1887, the sum of thirty-four thousand seven hundred and thirty-seven dollars and forty-one cents in cash—to the opponent among the number—prior to his death on the 8th of October, 1892; and that same, being in legal effect an *advance* to his children on their inheritance in his succession, operates the extinguishment of her claim, as a donation; or, if not, then as a payment and discharge thereof.

On the trial there was judgment dismissing the opposition and amending and homologating the account in some minor particulars; and from that decree the opponent prosecutes this appeal.

Preliminarily, opponent's counsel press upon our attention an alleged error of the judge *a quo* in sustaining the theory of counsel for the executor that the opponent's hereditary rights and claims had been settled, in the absence of any plea of payment having been formally tendered; though they frankly admit that this court has repeatedly recognized an exception to the general rule as existing in probate proceedings, on the theory that an opposition is but an answer to an account stated, which inaugurates the litigation.

Considered as *res nova*, their argument would be impressive, no doubt, but it is better that this court should continue to decide questions of practice as it has frequently decided them before.

The judge *a quo* has justly observed this rule.

It appears from the evidence that on the 28th of December, 1886, the deceased made a donation *inter vivos* in favor of his three children, as an *advance* on their inheritance in his succession, certain real and personal properties *in presenti*, which were valued in the act at thirty-six thousand six hundred dollars.

That, on the 5th of January, 1887, his commission merchant, at his

instance and direction, transferred from his own account to that of his children the sum of one hundred and four thousand two hundred and twelve dollars and twenty-three cents, that is to say thirty-four thousand seven hundred and thirty-seven dollars and forty-one ·cents to each.

That of this amount the opponent received her proportionate share.

The question raised on this state of facts is, whether or not this last transaction operated as a settlement of the opponent's hereditary claim against her father.

Outside of this single transaction, the evidence with regard to the father's intention in making the advance of so large a sum to his children shortly before his death involves it in doubt—the testimony of Mrs. Tassin being to the effect that her father had admitted his indebtedness and promised to liquidate the same; and that on the part of the executor favoring the theory of payment.

Counsel for the executor place strong reliance on the circumstance of the deceased having made to the heirs a large donation imme- diately previous to this transfer of funds, as giving to such transfer · the character of an *extra* judicial settlement of their hereditary rights and claims against him.

And it seems to us that there is some force in the suggestion; for it seems unlikely that the father, being aware of his indebtedness to his children of thirty-five thousand dollars, could have contemplated that it should remain unpaid, notwithstanding his donation to them of over· thirty-six thousand dollars, and his assignment of one hun- dred thousand dollars in cash in addition.

It seems likely that if it had been his intention it would have found some expression in the act.   But what seems to us as most striking is, that the two transactions absorbed from his assets about one hun- dred and forty thousand dollars, and increased their fortunes to that extent, notwithstanding his usufruct during life; and the consequence is, that the net value of his estate is placed at the small sum of twenty-five thousand dollars—an amount insufficient to reimburse to the heirs their hereditary claims, after succession debts and charges have been paid.

The judge *a quo* entertained the opinion that the executor's re- sistance to the opponent's demand was well-founded, and his defence complete; and he cited and relied upon the case of Rohrbacker vs. Schillinger, 12 An. 17, and Greenleaf on Evidence, Vol. 1, Sec. 38.

The case cited presents the question as to whether the administrator of a succession had a just claim against the defendant for one thousand dollars of loaned money—the defence being that the deceased had given him that sum "partly in payment of an antecedent indebtedness, and partly as a remunerative donation for services rendered."

The proof administered at the trial was meagre and unsatisfactory, except as to the solitary fact that one witness saw deceased deliver to the defendant a one thousand dollar bank note—the conversation being conducted in the German language, which the witness did not comprehend.

The court thereupon said:

"Upon this evidence we are compelled to decide whether proof of the bare fact that A handed a certain sum of money to B, unexplained, will authorize A to recover it back on the allegation that it was a loan.

"The highest authorities have decided this question in the negative."

In confirmation of this statement the opinion cites the following paragraph from Greenleaf, viz.:

"The mere delivery of money by one to another, or of a bank check, or the transfer of stock, unexplained, is presumptive evidence of the payment of an antecedent debt, and not of a loan." 1 Greenleaf on Evidence, Sec. 38.

The court then observes further:

If the deceased handed defendant "this money *knowing that he did not owe it*, and if there is no proof of his intention, the presumption of law is that it was a gift, and he could not succeed in a suit for its repetition without disproving the presumption."

And after the citation of some authority, the court sums up its conclusions thus:

"We are called upon to presume a *loan*, when the presumption of the law is that it was either *a payment* or *a gift*."

It is rarely the case that authorities so perfectly appropriate are cited. In our conception, the parallel is complete. The deceased either intended a donation, or a payment of a debt to his children. As the indebtedness confessedly existed, and the law *first* raises the presumption of *payment*, we think it our duty to do as did our learned brother of the District Court, and give it effect as such; and

the debt having been thus satisfied the further presumption of
a gift having been intended can be appropriately applied to the
residue.

This legal presumption supplies the place of the proof of payment
that is required by R. C. C. 2232; because Art. 2287 declares that
a "legal presumption dispenses with all other proof, in favor of him
for whom it exists."

Counsel for opponent suggests the *inapplicability* of the decision
quoted, in that this is not a suit for recovery of a sum of money the
deceased is alleged to have loaned to his children; but its *applica-
bility* appears to our minds clear, in that the opponent is seeking to
have placed upon the executor's account a claim which was pre-
sumably paid and extinguished by the transfer of funds to her ac-
count with her father's commission merchant at his request.    And
we simply hold, as did the court in Rohrbacker's case, that, in the
absence of proof of [her father's intention, the [opponent's demand
can not be sustained "without disproving the presumptions" of law
that it raised against her.

Opponent's further contention is that the particular legacies speci-
fied in her father's will exceed the disposable portion of his fortune
and trench upon the *legitime* of his forced heirs.

If regard is had to the value of decedent's estate at time of his
death this contention would be correct; but if we apply the rule
prescribed in the Code it is not.

That rule prescribes that in order to determine whether "any dis-
posal of property, whether *inter vivos* or *mortis causa*, exceeds the
*quantum* of which a person may legally dispose to the prejudice of
his forced heirs" (R. C. C. 1502) "an aggregate is formed of all
the property belonging to the debtor or testator at the time of his
decease; to that is fictitiously added the property disposed of by
donation *inter vivos*," etc.    R. C. C. 1505.

Following that rule the judge *a quo* found the result of the evi-
dence to be about as follows:

| | |
|---|---:|
| Inventoried value of estate | $24,242 76 |
| Amount of donation collated | 36,600 00 |
| Amount of transferred fund collated | 104,213 23 |
| Aggregate | $165,055 99 |
| Debt due heirs of hereditary claim | 20,644 05 |
| Balance | $144,411 94 |
| Deduct debts of succession | 2,732 40 |
| Balance | $141,679 54 |

Upon this result the *legitime* of the heirs is to be calculated and de-termined, one-third of same being forty-sevent housand two hundred and twenty-six dollars and nineteen cents; same represents the reserve. R. O. C. 1493, 1237.

Each one of the heirs having received, under the act of donation *inter vivos*, the sum of twelve thousand two hundred dollars, and by the assignment of cash thirty-four thousand four hundred and thirty-seven dollars and forty-one cents, the total amount of forty-six thousand six hundred and thirty-seven dollars and forty-one cents appears to have been consumed, less five hundred and eighty-eight dollars and seventy-nine cents.

As the reserve is divisible between the three heirs of the deceased, it is manifest that nothing favorable to the opponent could be ac-complished by reinstating the heirs in their original situation, as the result would be substantially the same in any future settlement be-tween them.

We thus find that opponent's complaint is not well founded, in that there is a small amount ascertained to be to the credit of the executor for the account of the heirs, after making an allowance sufficient to cover the entire amount of the hereditary claims of the three heirs of the deceased, including both of the other sums which are mentioned under the title of donations.

But, on the executor's hypothesis, that these hereditary claims were paid and discharged, we have this statement, viz.:

| | |
|---|---:|
| Amount put to credit of hereditary claims of the heirs in error | $20,644 05 |
| Balance on foregoing statement | 588 79 |
| Net amount imputable to legacies | $21,232 84 |
| Particular legacies deducted | 12,000 00 |
| There is a balance approximately of | $9,232 84 |

after deducting special legacies and donations, and this balance greatly exceeds the claim of the opponent.

The foregoing figures are not given as furnishing an accurate mathematical *resumé* of the succession; but merely as indicating the course of reasoning we have pursued in arriving at the conclusion stated.

Mrs. Tassin having judicially confessed that she had renounced all of her rights as residuary legatee under her father's will, the judge *a quo* properly amended the executor's account conformably thereto.

ON APPLICATION FOR REHEARING.

BREAUX, J. Mrs. Tassin, opponent and appellant, in her application for a rehearing, complains of the judgment appealed from in so far as it amends the executor's account, and she represents that, in this particular, it was rendered *ultra petitum* and is error.

The conclusion of the lower court on this point was logical, but it was not supported by special and express pleadings. The executor and the heirs were, as relates to Mrs. Tassin's renunciation of benefit under her late father's will, silent, in so far as the pleadings in the lower court shows; they suggested no amendment of the pleadings after the renunciation had been made.

In view of this fact, and also in view of the fact that it is suggested that the brothers of Mrs. Tassin have not claimed the benefit of the renunciation, and in view of the further fact that it is intimated or that, perhaps, it may be inferred, they never will make the claim.

We have concluded to amend the judgment appealed from to some extent; in accordance with the prayer of the petition, also, to amend our decree.

It is ordered and decreed that to Mrs. Tassin is reserved all claims she may have under the will, to this extent only: we do not pass upon her rights, after having renounced as before stated; nor do we pass upon the rights of her brothers, as to whether they can avail themselves of the benefit of the renunciation, after the homologation of the executor's account in so far as not opposed and in view of the circumstances of the case. We do not pass upon the question at all; we reserve the rights of all parties as relates to the renunciation; whether or not it shall be enforced as originally made, and to that end, and to try and decide that issue only, the case is remanded. The costs to abide the final result of this case.

With this amendment our decree remains.

Rehearing refused.